(16 Misc. Rep. 453.)

### MILLER v. DONOVAN.

(Supreme Court, Trial Term, New York County. March, 1896.)

1. LIBEL AND SLANDER—INVITING PUBLICATION.
   An action for libel cannot be maintained by one who invited publication of the alleged libelous writing, unless there was a previous publication.

2. SAME—PROOF OF PUBLICATION.
   To read a libelous letter to another is evidence of publication.

3. SAME—JUSTIFICATION.
   In order to prove justification, defendant must show that the entire charge imputed to plaintiff is true.

4. SAME—PUNITIVE DAMAGES.
   Punitive damages can be awarded in an action for libel only where there was actual malice.

Action by Charles B. Miller against Joseph S. Donovan for libel. Verdict for defendant.

Alexander S. Bacon, for plaintiff.
John S. Durand, for defendant.

GIEGERICH, J. (charging jury). This action is brought to recover damages for the publication of a certain letter concerning the plaintiff, which is alleged to be false and defamatory. A libel is defined to be a malicious publication by writing, printing, picture, effigy, sign, or otherwise than by mere speech, which exposes any living person, or the memory of any person deceased, to hatred, contempt, ridicule, or obloquy, or which causes, or tends to cause, any person to be shunned or avoided, or which has a tendency to

injure any person, corporation, or association of persons, in his or their business or occupation. It may further be defined to be any unprivileged publication of which the necessary tendency is to expose a man to hatred, contempt, or ridicule. Words alleged to be libelous are to be taken in the sense that is most natural and obvious, and in that sense in which those persons to whom the publication should come would be most likely to understand them. If the application or meaning of the words is ambiguous, or the sense in which they are used is uncertain, and they are capable of a construction which would make them actionable, although at the same time an innocent sense might be attributed to them, it is for the jury to determine, upon all the circumstances, whether they were applied to the plaintiff, and in what sense they were used. The complaint alleges that at various times during the month of November, 1893, and at various other times during the year 1893, at the city of New York, the defendant did falsely, wickedly, and maliciously publish, and cause or procure to be published, of and concerning the plaintiff, a false, scandalous, and defamatory libel, contained in a copy of the following letter: Is it necessary, gentlemen, for me to read that letter again?

The Jurors: No.

The Court: I will then refrain from reading it, and at the same time inform you that part of it marked "Second," relating to the failure of the firm of Miller & Co., has been withdrawn, so that that is not in the case.

The complaint further alleges that the defendant has repeatedly shown the original of said letter to many persons, and, having caused the same to be printed, has shown and circulated the same; that it was intended thereby to accuse plaintiff of being a scoundrel and a cheat, and not to be believed under oath, and that he had been guilty of said crimes and misdemeanors, and meant and intended to accuse plaintiff of odious and disgraceful conduct; that such accusations are false and defamatory; and that, by means of the committing of such grievances, plaintiff has been greatly injured in his good name, fame, and credit, and brought into public scandal, infamy, and disgrace among his neighbors, business associates, and other good and worthy citizens. The answer is— Firstly, a general denial; secondly, there is set up as a first separate defense the following:

"He admits: That in or about the month of November, 1893, he exhibited a copy of the said letter, which he found among his father's papers after his decease, to one Frederick W. Moffett, whom he had formerly known as an employé of the Magnolia Anti-Friction Metal Company, and who called upon this defendant at his office, and stated to defendant that he had left the employment of the Magnolia Anti-Friction Metal Company; that said company and the Millers (meaning the plaintiff, Charles B. Miller, and his brothers) had treated him very unfairly; on one occasion one of them had broken open his valise and stolen his letters, and he was now selling metal on his own account, and wanted to purchase of this defendant some of the metal known as the 'Thistle Metal,' which this defendant was at the time selling as the agent of one David Wilson. And the said Moffett then bought from this defendant a small quantity of the said Thistle metal, and stated that he had heard of the aforesaid Cloud & Cloud letter, a copy of which is given in the complaint,

and he asked this defendant to show him a copy of the letter; and this defendant did then and there show the aforesaid printed copy to the said Moffett, and allowed him to read over the same in his presence. That afterwards, and in or about the month of November, 1893, the said Moffett came to this defendant's office, accompanied by a man he introduced as Mr. Williams, who, he said, was a large dealer in anti-friction metals, and he desired to purchase some of this defendant's Thistle metal, and said Williams then and there ordered from this defendant 500 pounds of the said Thistle metal, and afterwards, when paying for said metal so purchased, said Williams requested this defendant to show the said printed copy of the Cloud & Cloud letter to him, said Williams saying that the Magnolia people had treated him badly; and thereupon, upon the ground that, as a dealer in anti-friction metals, said Williams was interested in knowing the character of persons with whom he dealt, this defendant did allow the said Williams to examine the said printed copy, and he believes that he read the same in his presence. That, in exhibiting the said copy of the printed letter to said Moffett and to said Williams, this defendant supposed that as dealers in metals, and particularly in anti-friction metals, the said Moffett and Williams were interested in knowing the character of the said Charles B. Miller, and alleges that this defendant had the right to communicate to them what he knew or believed to be true about said Miller and his practices, and this defendant exhibited the said copy of letter to them, believing and having reason to believe that the statements therein contained, so far as they related to Charles B. Miller, were true; and he stated to them, and each of them, on each of said occasions, that he desired to avoid any possible charge of libel on the part of the said plaintiff, and refused to allow them to take the said printed copy of the letter away, or to do anything except to read it and examine it in his presence. That he has since learned that the said Moffett was at the time of the said interview still in the employ of the said Magnolia Anti-Friction Metal Company, and was sent by the said Charles B. Miller, the president of the said company, to entrap this defendant into exhibiting the aforesaid copy of letter to him, in order that the said Charles B. Miller might harass and annoy this defendant with an action for libel, and that said Williams was, either by the said Moffett or by the said Charles B. Miller, induced to accompany the said Moffett, and to act his part in the said interview in aiding to entrap this defendant; and this defendant alleges that so far as the said Moffett and the said Williams, or either of them, were engaged in said transaction as dealers in metal, the said communications were privileged, and that, inasmuch as the said Charles B. Miller invited and voluntarily incurred the said alleged publications, that he is without remedy in the premises on account thereof."

And the answer further sets up, thirdly, the truth of the alleged statement; and, fourthly, in mitigation of damages, the several matters separately pleaded as constituting a privileged communication, and in justification.

The first question which you will have to decide is, did the defendant read or publish the letter in question, as alleged in the complaint? To read a libelous letter to another is evidence of publication. You must determine, gentlemen, from the whole case, whether there was a publication of the letter, as defined by the court. The defendant admits that he exhibited a copy of the letter to Moffett and Williams, but contends that the latter were agents of the plaintiff, and were sent by him to entrap the defendant, and that, the plaintiff having invited and voluntarily incurred the said alleged publication, the said communications were privileged. I charge you that, if the plaintiff invited and procured the publication of the letter for the purpose of making it the foundation of an action, it would be, in my opinion, most unjust that the procurer of the alleged wrongful act should be permitted to profit by it,

unless there has been a previous publication of the letter by the defendant. If my recollection serves me right, it is substantially undisputed that plaintiff, through the agency of Moffett and Williams, procured the publication of the letter by the defendant; that is, the reading to them of a printed copy of the same. If I am correct, then all you will have to decide is whether or not there has been a previous publication of the letter by the defendant. Plaintiff contends that the evidence shows that the defendant had been guilty of a previous publication. The defendant, on the other hand, denies that he made any publication of the letter, except to Moffett and Williams. Now, gentlemen, you have heard the testimony in the case, and you have observed the manner of the witnesses upon the stand; and I leave it to you to determine, from the entire case, where the truth lies. The burden of proving that there was a previous publication of the letter by the defendant is upon the plaintiff, and he must establish that proposition to your satisfaction, by a fair preponderance of the evidence. If he has failed to do so, or the evidence upon that point is evenly balanced, so that it does not preponderate in favor of one side or the other, your verdict will be in favor of the defendant.

If you find, however, from the whole evidence, and under the instructions of the court, that there has been a previous publication of the letter by the defendant, and that he did publish the letter as alleged, you will next decide whether or not the defendant has established the truth of the substance of the charges contained in the letter. The justification must establish the substance of the charge justified, though it need not be identical in letter and form. The defendant, in order to prove a justification, must show that the entire charge imputed to the plaintiff is true, and that justification must be as broad as the charge. Now, gentlemen, you have heard with great patience the testimony which has been adduced in this case. The contention of the defendant is that these charges which are imputed in the letter in question are true. The plaintiff says that they are not true. You, gentlemen, after hearing all the evidence in the case, must determine therefrom upon which side the truth lies. The burden of proving the truth of these charges is upon the defendant, and he must establish this proposition to your satisfaction by a fair preponderance of the evidence. If he has failed to do so, or the evidence is evenly balanced upon this point, your verdict upon this branch of the case must be in favor of the plaintiff.

It is well, gentlemen, that I should, at this juncture, call your attention to certain considerations. It is my duty to instruct you as to the law, and you are to apply the same to the facts as you shall find them; for you are the sole judges of the facts, and your guide as to the law of the case is the charge of the court, and not the statements of counsel.

The defendant, at various stages of the trial, moved for a dismissal of the complaint, and at the close of it moved for a direction of a verdict in his favor, all of which motions were denied. I charge

you, gentlemen, that the denial of these motions is not to be taken by you as any indication that I think the plaintiff is entitled to recover. These were simply rulings of the court that the plaintiff has presented such a state of facts as requires a consideration of them by a jury.

While the law makes the parties litigant in this case competent witnesses, yet you have a right to take into consideration their situation and interest in the result of your verdict, and you may give to their testimony only such weight as you deem it fairly entitled to. In determining the issues in this case, you are to carefully weigh the evidence, and, if you can reconcile the apparently conflicting statements of the witnesses, it is your duty to do so, and determine which side you believe has the better recollection of the facts and circumstances of the case. You are to take into consideration all of the testimony of the witnesses in the case, their manner upon the witness stand, and the motives which influenced them in giving their testimony. You must determine this case upon the evidence as you remember it, and you are not to take the statements of the counsel or the court which conflict with your recollection of the same. You have heard the contentions of the respective parties to this cause as ably and eloquently presented by their counsel, and the strict attention paid by you to the case will, I am convinced, enable you to consider the evidence properly, and come to a prudent and safe result. These considerations, if they stood alone, would, in my opinion, justify a trial judge in refraining from making any comment upon the testimony; but it might also with propriety be said by either or both parties litigant that portions of the evidence pertinent to their side of the cause have been omitted, or undue prominence given to unimportant facts, or parts of the evidence had been erroneously stated. I will not, therefore, make any comment upon the evidence beyond that already made. If you find, from the whole evidence, and under the instructions of the court, either that there was no previous publication of the letter by the defendant, or that the defendant has established the truth of the entire charges contained in the letter, your verdict will be in favor of the defendant. If you find, however, from the whole evidence, and under the instructions of the court, that there was a previous publication of the letter by the defendant (in other words, that the publication was not privileged), and that the charges, or some of them, contained in the letter, are untrue, your verdict will be in favor of the plaintiff, in which event you will proceed to the consideration of the question of damages. In an action for libel there are two kinds of damages which the plaintiff may recover. The first is compensatory damages, which means reparation for the actual injury the plaintiff has suffered because of the defamation; and, secondly, exemplary or punitive damages,—that is, damages over and above such sum as will compensate him for his actual loss. From a libel the law presumes injury, but it is for the jury to measure the extent of the injury, and to award a commensurate amount of compensation. For the injury which the

law intends the plaintiff has suffered from the libel, you should, in case you come to the conclusion from the whole evidence, and under these instructions, that the plaintiff is entitled to recover, award him adequate compensation; that is, such a retribution in money as in your sound discretion, determined upon the evidence, will afford him a fair and just compensation for the alleged wrong of which he complains. Therefore, if you find that the plaintiff is entitled to your verdict, you will award to the plaintiff such a sum in damages as, in your judgment, will compensate him for the injury he has actually sustained from the publication of the libel. Besides a mere recompense for actual injury, the jury, in an action for libel, may, according to the circumstances, award the plaintiff exemplary or punitive damages; that is, damages over and above such sum as will compensate him for his actual loss. The principle of punitive or exemplary damages, as the terms import, is not so much reparation to the plaintiff as a penalty upon the defendant. They are allowed as a punishment for his evil motive, the mischievous intention, and as a warning to others against committing the like offense. The ground and justification of exemplary, punitive damages being the bad motive of the defendant, the presence and proof of bad motive is the indispensable condition of the right of the jury to impose such damages. In technical language, malice, or its legal equivalent, on the part of the defendant in perpetrating the wrong, is necessary to authorize an award of exemplary damages. In the law of libel the word "malice" has a twofold signification. It may mean malice in law, or malice in fact. It may mean the malice which the law imputes to every wrongful act intentionally and without legal justification or excuse, or it may mean actual malice; that is, a real motive prompting to the defamation. From the unprivileged communication of a libel the law implies malice, and the inference is irrebuttable. But this is not the sort of malice which authorizes the imposition of exemplary damages. To authorize the imposition of exemplary damages, there must be not only constructive malice, but malice in fact; that is, an actual evil motive, or its equivalent, on the part of the defendant. If the defendant was prompted to the publication by any malevolence towards the plaintiff,—by any desire or intention to injure him,—you may award exemplary damages against the defendant. If you conclude that the defendant should not be made to pay punitive damages, you will award the plaintiff such a sum only as will be a fair and just compensation for the injury he suffered from the libel. If you conclude that, by intentionally or recklessly inflicting injury on the plaintiff, the defendant has exposed himself to the penalty of exemplary damages, you may award such an amount as, in your sound discretion, you think right and proper; and if any material circumstance has been shown to your satisfaction, which will, in your opinion, mitigate the damages against the defendant, you may take the same into consideration.

Gentlemen, the case is of importance, not only to the parties litigant, but to every member of the community. I therefore beg and believe that you will decide it without fear, favor, sympathy, preju-

dice, or passion, and that you will be guided to your conclusion by no other motive than a desire to do justice according to the law as laid down by the court, and the evidence.

The jury thereupon retired, and returned a verdict in favor of the defendant.